UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANGELIQ MARIE PRYOR                                                              Plaintiff

v.                                                            Civil Action No. 3:21-cv-733

SEVEN COUNTIES SERVICES, INC.                                                    Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Seven Counties Services, Inc., ("Seven Counties") moves for summary

judgment. [DE 37].[1] Plaintiff Angeliq Pryor ("Pryor") moves for leave to file out of time, [DE 44],

and responded to Seven Counties' motion for summary judgment [DE 45]. Seven Counties

responded to Pryor's motion for leave to file out of time. [DE 46]. These matters are ripe. For the

reasons below, Pryor's motion for leave to file out of time [DE 44] is **DENIED** and Seven

Counties' motion for summary judgment [DE 37] is **GRANTED**.

## I.        BACKGROUND

On December 8, 2021, Pryor sued Seven Counties, alleging claims for constructive

discharge, discrimination under the Americans with Disabilities Act, hostile work environment,

retaliation, and violations of Kentucky's wage and hour law. [DE 1 at 5-6]. On February 11, 2022,

Pryor filed an Amended Complaint. [DE 5], and on February 1, 2023, Pryor filed Second Amended

Complaint. [DE 23].[2] On October 16, 2023, Seven Counties moved for summary judgment on all

claims, arguing that there is no genuine dispute as to any material fact and that it is entitled to

---

[1] Although Counsel attached a Memorandum in support of their motion [DE 37-1], the Joint Local Rules
for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum.
*See* Local Rule 7.1. In the future, Counsel is advised to file a unified motion.
[2] The differences between Pryor's Complaints are not relevant to the motion for summary judgment or the
motion for leave to file out of time.

judgment as a matter of law. On November 6, 2023, just days after attending a settlement conference with the Magistrate Judge, Pryor moved for an extension of time to respond, asking the Court for a ten-day extension, [DE 40], which the Court granted. [DE 42]. Pryor did not respond within the enlarged period.  On December 13, 2023, Seven Counties replied to the motion for summary judgment, arguing that the time to respond had passed and that it was entitled to summary judgment as a matter of law. [DE 43]. Several months later, on March 10, 2024, Pryor moved for leave to respond out of time [DE 44] and filed a response in opposition to Seven Counties' motion for summary judgment the same day. [DE 45]. On March 18, 2024, Seven Counties responded to Pryor's motion for leave to respond out of time, arguing that it should be denied because there are no grounds for finding excusable neglect. [DE 46 at 414].

## II.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party,

2

drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497

(6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed"

by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV.

P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt

as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986).

Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of

establishing or refuting one of essential elements of a cause of action or defense asserted by the

parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007)

(alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal

quotation marks omitted). If the nonmoving party does not respond with specific facts showing a

genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351,

353 (6th Cir. 1989).

### III.    DISCUSSION

#### 1.  Pryor's Motion for Leave to File Out of Time

When a plaintiff moves to extend a response deadline after the deadline has passed, a

district court may grant the extension "only if her failure to act resulted from excusable neglect."

*Howard v. Nationwide Prop. & Cas. Ins. Co.,* 306 F. App'x 265, 266 (6th Cir. 2009) (citing

Fed.R.Civ.P. 6(b)(1)(B)). The Sixth Circuit has adopted the Supreme Court's five factor test in

determining excusable neglect:

> (1) the danger of prejudice to the nonmoving party,
> (2) the length of the delay and its potential impact on judicial proceedings,
> (3) the reason for the delay,
> (4) whether the delay was within the reasonable control of the moving party, and
> (5) whether the late-filing party acted in good faith.

*Id.* (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).

Pryor's attorney states that "the deadline fell within a hectic time for the undersigned with

preparation for the upcoming Thanksgiving and Christmas holidays as well as coinciding with a

health scare . . . it has come to the undersigned's attention that a response to Defendant's motion

for summary judgment has not been filed." [DE 44 at 319].

Although an attorney's "failure to place the deadline for responding on his calendar," may

be excusable neglect where there is "no prejudice to the opposing party or efficient judicial

administration," *Howard,* 306 F. App'x at 267, such is not the case here. In *Howard*, the Sixth

Circuit affirmed the district court's striking of the plaintiff's response in opposition. *Id.* The court

noted that the time the district court had to "consider the motion was shortened, especially

considering that the district court would have also needed to wait for Defendant's reply brief and

that mediation was to take place prior to trial." *Id.* Similarly, Pryor filed her motion for leave to

file out of time and her response in opposition on March 10, 2024, six weeks before the final

pretrial conference. [*See* DE 17 at 76]. Pryor's response was filed 115 days late. Because of the

length of the delay and the impact on judicial proceedings, the Court **DENIES** Pryor's motion for

leave to file out of time.[3]

---

[3] Although the Court will not consider Pryor's untimely response in opposition, for the reasons explained below, it would not affect the Court's analysis.

**2. Seven Counties' Motion for Summary Judgment**

Even where, as here, a party fails to oppose a motion for summary judgment, the Court must still determine whether the moving party has met its burden. *See, e.g., Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) ("A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden.").

*a. Constructive Discharge (Count I)*

Although Pryor alleges a claim for Constructive Discharge, this Court has held that constructive discharge is not a standalone claim. *Marrero-Perez v. Yanfeng US Auto. Interior Sys. II LLC*, No. 3:21-CV-645-RGJ, 2022 WL 4368165, at *5 (W.D. Ky. Sept. 21, 2022) ("Constructive discharge, even if shown, does not support an independent cause of action.") (citing *Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-H, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013)). Instead, "[a] constructive discharge may constitute an adverse employment action, which can be an element of a claim under the KCRA." *Id*. (citing *Brooks v. Lexington–Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004)).

Because constructive discharge is not an independent claim under Kentucky law, Pryor's constructive discharge claim fails as a matter of law, and Seven Counties' motion for summary judgment on this claim is **GRANTED.**

*b. Failure to Accommodate (Count II)*

To establish a prima facie failure-to-accommodate claim, Pryor must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) Seven Counties knew or had reason to know about her

5

disability; (4) Pryor requested an accommodation; and (5) Seven Counties failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.,* 909 F.3d 834, 839 (6th Cir. 2018) (citing *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016)).

To be "otherwise qualified" for a job, an individual must be able to perform the "essential functions" of the job with or without reasonable accommodations. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (citing 42 U.S.C. § 12111(8)). In determining whether a function is essential, courts consider several factors, including: "(1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." *Id.* at 925-926 (citing 29 C.F.R. § 1630.2(n)(1)).

Seven Counties does not contest that Pryor is disabled or that it knew or had reason to know of Pryor's disability. Seven Counties argues that there is no genuine dispute to the material facts that Pryor did not request accommodations, that even with reasonable accommodations Pryor was not otherwise qualified for her position,[4] and that in any event, Seven Counties provided reasonable accommodations. [DE 37-1 at 163-64].

As a threshold issue, as Seven Counties points out, the undisputed facts show Pryor acknowledged in her deposition that she did not ask for any accommodations:

> Q: Okay. So we've talked about your worker's comp claim, this FMLA claim. And I want to ask you, did you apply for any accommodations to help you do your job at Seven Counties?
> A: I didn't know anything about that. Didn't know. I didn't know what -- I didn't know anything about accommodations to even ask for that.
> Q: So you never asked for any accommodations?
> A: I didn't know what to ask for.

---

[4] The parties do not dispute that Pryor is unable to perform the essential functions of her position without some accommodation.

[DE 37-21 at 297].

Because under the ADA, "the employee typically bears 'the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable,'" Seven Counties would be entitled to summary judgment as a matter of law because Pryor has failed to show a genuine dispute as to whether she requested an accommodation. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 371 (6th Cir. 2024) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007)).

But even if Pryor had requested accommodations, Seven Counties points to Pryor's deposition to establish that it provided her with reasonable accommodations: (1) Seven Counties reduced Pryor's caseload for six months, [DE 37-21 at 298]; (2) Seven Counties provided Pryor with dictation software for her to keep client records and notes with, [*id.* at 297]; (3) Pryor was given a time extension to pass the company's case-manager test, [*id.* at 298]; and (4) Seven Counties provided Pryor with her own office to reduce "sensory issues" stemming from her disability. [*Id.* at 299]. Accordingly, the undisputed facts show that Seven Counties provided reasonable accommodations.

Moreover, even if Pryor had shown a genuine dispute as to whether she had requested, and whether Seven Counties had provided, reasonable accommodations, Pryor would still need to show a genuine dispute as to whether she was able to perform essential functions of her job with such accommodations. In arguing that there is no material dispute about whether Pryor is unable to perform the essential functions of her job, Seven Counties points to five functions listed in Pryor's job description:

ESSENTIAL JOB FUNCTIONS

1. Conducts and documents comprehensive assessment of client and/or client's needs.

2. Participates in development of client's service plan, consistent with assessment.

\*\*\*

7. Prepares and maintains case records documenting contacts, services needed, reports, client's progress, et., in accordance with SCS and regulatory standards.

\*\*\*

10. Provides psychosocial education to clients and/or family members to increase their understanding of client's illness, physical condition, or social situation.
\*\*\*

13. Serves as informal mentor to new case managers/service coordinators, answering questions, offering opportunities to shadow and observe, and explaining basic information about site's programming.

[DE 37-3 at 194].

Seven Counties contends that Pryor admitted in her deposition that not only was she unable to perform these essential functions, but that she was unable to perform even unessential functions. For support, Seven Counties first cites Pryor's statement that "I don't feel that I'm able to do the work. I'm not able to do social services anymore. I can't -- I can't keep up with the demands of a social work job." [DE 37-21 at 302]. Seven Counties also cites Pryor's statements that when she returned to work, she "didn't know how to do basic things. Like, put notes in on the clients, procedures that I had trained other case managers, and now they had to train me," [*id*. at 295], and that Pryor was told she "would be expected to do the job just like everybody else," [but] was having so much trouble with the cases. Like I said, I -- I was always behind." [*Id*. at 299]. Even viewing these statements in the light most favorable to Pryor and drawing all reasonable inferences in her favor, they fail to show a genuine dispute as to whether she was able to perform the essential functions of her job with or without accommodations—the undisputed facts are that she conceded she was unable to perform them. As a result, Seven Counties is entitled to summary judgment as

a matter of law on this claim. Seven Counties' motion for summary judgment as to the claim for

failure to accommodate is **GRANTED**[5]

  *c. Hostile Work Environment (Count III)*

  The analysis for a hostile work environment claim brought under K.R.S § 344.040 is the

same for those brought under Title VII of the Civil Rights Act of 1964. *Beatty v. Frito-Lay, Inc.*,

429 F. Supp. 3d 342, 347 (E.D. Ky. 2019) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758

(6th Cir. 2000)). A plaintiff "must demonstrate that (1) she was disabled; (2) she was subject to

unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment

unreasonably interfered with her work performance; and (5) the defendant either knew or should

have known about the harassment and failed to take corrective measures." *Trepka v. Bd. of Educ.*,

28 F. App'x 455, 461 (6th Cir. 2002). Courts consider the totality of the circumstances, including

"the frequency of the discriminatory conduct; its severity; whether it was physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an

employee's performance." *Smith*, 813 F.3d at 309 (citation and alterations omitted). "A hostile

work environment exists" when the workplace is "permeated with discriminatory intimidation,

---

[5] Even if the Court considered Pryor's untimely response in opposition, the Court's analysis would not change. Pryor argues that while "the reduction in caseload and the provision of dictation software are noted as accommodations . . . [i]f these accommodations did not address the fundamental barriers Pryor faced due to her disability, they cannot be considered reasonable under the ADA." [DE 45 at 339]. Pryor contends that Seven Counties did not consider "whether all avenues for accommodation were explored, including possible reassignments or modifications to her job functions," without citing evidence in the record that creates a genuine dispute as to whether she requested such accommodations, or whether Seven Counties provided reasonable alternative accommodations. *Id.* at 337. Pryor, in essence, argues in the hypothetical; although Pryor argues that "the adequacy, effectiveness, and comprehensiveness of [Seven Counties'] accommodations, as well as the engagement in the interactive process required by the ADA, present genuine issues of material fact that preclude summary judgment," [DE 45 at 339], she fails to cite evidence in the record that creates such a genuine dispute. As a result, the Court's analysis would come to the same conclusion.

ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Beatty,* 429 F. Supp. 3d at 347 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This test contains both a subjective and an objective component: the plaintiff must "perceive [] the environment to be abusive [and] a reasonable person would find the environment objectively hostile." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999).

Seven Counties points to four instances in Pryor's deposition that fail to show a genuine dispute about whether there was a hostile work environment. First, Pryor's statement that the hostile work environment stemmed from her supervisor's "way of talking to you in a very condescending kind of way." [DE 37-21 at 300]. Second, Pryor's supervisor's statement that "I've showed you so many times, and you had the training and still in you – in --- in the – in the system. It's nothing near what it's supposed to be, and I don't know what else to tell you. I don't know how else to make you understand how to do this." [*Id*. at 301]. Third, Pryor's supervisor's statement that "the numbers are not coming in. You're not doing this, you're not doing that, and you should be doing this, and you should be doing that," that she said "in a cocky kind of way." [*Id*. at 301]. Finally, Pryor's statements that her supervisor created a hostile work environment because "she would interrupt me," and she would "talk over me," [*id*. at 303], and her supervisor telling her that she was behind on notes, giving her a deadline, and asking her to tell her in advance that she could not complete her notes, was also hostile. [*Id*. at 303].

Even viewing these statements in the light most favorable to Pryor and drawing all reasonable inferences in her favor, they fail to show a genuine dispute as to whether there was a hostile work environment. To begin, condescending statements do not, on their own, create a hostile work environment. *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 860 (M.D.

Tenn.), *aff'd*, 666 F. App'x 453 (6th Cir. 2016) (holding that "constant interactions in condescending and intimidating tones," and "regular ridicule and negative comments," did not constitute a hostile work environment). Similarly, a supervisor who displays "rude behavior, blunt manner, yelling, and talking over [plaintiff] [is] certainly unprofessional and offensive," but such conduct "fails to demonstrate fails to demonstrate that [plaintiff's] workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter conditions of [her] employment and create an abusive working environment.'" *Harmon v. Honeywell Intelligrated*, No. 1:19-cv-670, 2023 U.S. Dist. LEXIS 27100, at *57 (S.D. Ohio Feb. 15, 2023) (citing *Harris*, 510 U.S. at 21).

Second, a supervisor's comments on a worker's lack of performance—even rude ones—do not on their own create a hostile work environment. *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) ("Conversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress."); *see also Trepka,* 28 Fed.Appx. at 461 (concluding that a supervisor's "contentious oral confrontation" with yelling, "stern words about [plaintiff's] ability to walk" and "words express skepticism regarding [plaintiff's] condition" did not create hostile work environment)).

Even viewed in the light most favorable to Pryor and drawing all reasonable inferences in her favor, these facts do not create a genuine dispute as to the material fact of whether there was a hostile work environment. As a result, Seven Counties is entitled to summary judgment as a matter

of law on this claim. Seven Counties 's motion for summary judgment as to the claim for hostile work environment is **GRANTED**.[6]

### d. Retaliation Claim (Count IV)

For a claim of retaliation under Kentucky law, a plaintiff must show that "(1) [s]he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Benningfield v. Fields,* 584 S.W.3d 731, 738–39 (Ky. 2019) (citing *Dollar Gen. Partners v. Upchurch,* 214 S.W.3d 910, 915 (Ky. App. 2006)).

In examining whether there is a causal connection, "[i]n most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Colorama, Inc. v. Johnson,* 295 S.W.3d 148, 152 (Ky. Ct. App. 2009) (citing *Brooks,* 132 S.W.3d at 804)). Although constructive discharge is not a standalone claim, it may constitute an adverse employment action. *Brooks*, 132 S.W.3d at 807. ("Constructive discharge may constitute an adverse employment action within the meaning of the KCRA").

---

[6] Pryor's response in opposition would not affect the outcome of the Court's analysis on this claim. Pryor argues that "[t]he subjective nature of Pryor's experiences, the impact of her disability on her perception of the work environment, and the questionable effectiveness of the employer's corrective measures present genuine issues of material fact." [DE 45 at 344]. However, as outlined above, the plaintiff's subjective perception is only half of the analysis; the Court also considers whether "a reasonable person would find the environment objectively hostile." *Williams*, 187 F.3d at 568 (6th Cir. 1999). [DE 45 at 344]. Moreover, a hostile work environment exists where the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Beatty,* 429 F. Supp. 3d at 347. Pryor's response cites to no evidence in the record to create a genuine dispute as to the material fact of whether there was a hostile work environment.

In determining whether there was a causal connection between the protected activity and the adverse action, the court in *Brooks* found that a four-month period was "was too long to create, by itself, an inference of causality." 132 S.W.3d at 804. Instead, the court inferred a temporal causal connection from Brook's employer "requir[ing] her to ask for permission for any and all absences from her desk" which occurred "very close in time with a scheduled visit by the Human Rights Commission officer assigned to investigate Brooks' discrimination complaint. *Id*.

Seven Counties contends that there is no causal connection between Pryor's protected activity (filing a workplace compensation claim) and the alleged adverse employment action (Pryor's constructive discharge). [DE 37-1 at 170]. In support of the motion for summary judgment, Seven Counties points to the fact that Pryor filed her workplace compensation claim in December 2018, and her alleged constructive discharge occurred in April 2021: twenty-eight months later. [DE 37-1 at 170-71]. Unlike in *Brooks*, the undisputed facts include no other action from which the Court could infer a temporal causal connection between the protected activity and the alleged adverse employment action. As a result, Seven Counties is entitled to summary judgment on this claim, and the Court **GRANTS** summary judgment as to the retaliation claim. [7]

e.   *Wage and Hours Claim (Count V)*

Finally, Pryor alleges violation of The Kentucky Wage and Hour Act. That statute states:

(1) No employer shall employ any of his employees for a work week longer than forty (40) hours unless such employee receives compensation for his employment in excess of forty (40) hours in a work week at a rate of not less than one and one-half (1-1/2) times the hourly wage rate at which he is employed.

KRS § 337.285 (1).

---

[7] Pryor's response in opposition would not affect the Court's analysis on this claim. Although Pryor argues that the three-year period is not dispositive because she faced "increased scrutiny, inadequate accommodations for Pryor's disability, and a general disregard for her wellbeing," she cites to no evidence in the record to create a genuine dispute as to the material fact of whether her filing her workers compensation claim was casually connected to her alleged constructive discharge. [DE 45 at 345].

Although claims brought under Kentucky law and the Fair Labor Standards Act ("FLSA")
are different, Kentucky's Supreme Court has approvingly noted that because "the substantive
provisions of the FLSA" are "substantially similar to those in KRS Chapter 337," Kentucky courts
may "look to the federal cases for guidance" when the analysis is "relevant and pertinent to our
review." *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d
89, 95 (Ky. 2006).

In arguing that there is no genuine dispute about whether Pryor was paid wages due to her,
Seven Counties cites Pryor's deposition. When Pryor was asked how many hours a week she
worked, Pryor answered "40 . . . honestly, there were other hours at home. . . [b]ecause the work
was so demanding, and if you didn't, it was common knowledge, everybody was doing it. If you
didn't do stuff at home, you would -- you would definitely be behind[.]" [DE 37-21 at 294]. Pryor
further stated that "I was the kind of employee that I went the extra mile. My clients were so
important to me that I often would work late." [DE 37-21 at 295]. When asked Pryor was asked
about her work when she was injured, she stated that she was working "not overtime but just, like,
flexing time or working -- or working late . . . [a]nd I did that to accommodate [her client's]
schedules." [*Id.*]. Seven Counties also cites Pryor's Performance Improvement Plan, which
instructed Pryor that "you are not to work overtime." [DE 37-13 at 234].

As noted above, a plaintiff survives a motion for summary judgment only "if the evidence
is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S.
242 at 248. Even viewed in the light most favorable to Pryor and drawing all reasonable inferences
in her favor, these facts fail to show a genuine dispute about whether Seven Counties failed to pay
Pryor wages due to her.

In an FLSA case, the district court held that a plaintiff's deposition testimony "was too 'equivocal, conclusory, and lacking in relevant detail' to create a genuine dispute of material fact under Rule 56." *Viet v. Le*, 951 F.3d 818, 824 (6th Cir. 2020). The Sixth Circuit affirmed, holding that the district court correctly ruled that the plaintiff failed to create a genuine dispute because his "bare assertion[ ] that he worked overtime is too conclusory to create a jury question over whether [plaintiff] worked overtime in any given week," during the period he alleged. *Id.* (citing *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014)). Although the plaintiff in *Viet* argued that the district court created a "seemingly impossible standard for employees to withstand summary judgment over whether they worked more than 40 hours per week," *id.* at 826, the Sixth Circuit explained:

> [Employees] need not recall their schedules with perfect accuracy in order to survive a motion for summary judgment. They must only coherently describe their day-to-day work schedules or the time it takes to complete their duties so that a rational jury could find that they worked more than 40 hours in the weeks claimed. What they may not do is simply turn a complaint's conclusory allegations about overtime work into an affidavit's conclusory testimony about overtime work and expect to get a jury trial under Rule 56.

*Id.* (internal citations and quotations omitted).

Although Pryor testified generally to working overtime in her deposition, stating that "honestly, there were other hours at home," and, "it was common knowledge, everybody was doing it. If you didn't do stuff at home, you would – you would definitely be behind," [DE 37-13 at 294], these statements would create a genuine dispute of material fact "only if we adopted a legal rule that conclusory estimates about an employee's average workweek allow a rational jury to conclude that the employee worked overtime." *Viet*, 951 F.3d at 825.

Moreover, Pryor's statements are even more general than those the court found insufficient in *Viet*, where the plaintiff stated that "he typically worked 60 hours per week." *Id*. at 824.The

15

undisputed facts show that Pryor's performance improvement plan states that she was not authorized to work overtime to complete her work notes. [DE 37-13 at 234]. In her deposition, Pryor also stated that she "went the extra mile" because her "clients were so important to her," not because she was working overtime. [*Id.* at 295]. As in *Viet*, Pryor's general statements about overtime fail to create a genuine dispute of material fact as to whether she worked overtime because they "provide[] no details which would allow a jury to determine [that she] worked beyond forty hours in any specific week." 951 F.3d at 825 (citing *Holaway*, 771 F.3d at 1060).

Regarding Pryor's statements that working overtime "was common knowledge, everybody was doing it," [DE 37-13 at 294], it is true that under the FLSA regulations, an employee "must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time," so long as "the employer 'knows or has reason to believe that the employee is continuing to work' and that work was 'suffered or permitted' by the employer." *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 380 (6th Cir. 2006) (citing *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir.2001); 29 C.F.R. § 785.11)). Kentucky has adopted 29 C.F.R. § 785.11's standards of "suffered or permitted to work" for claims brought under KRS § 337.285. *See* 803 Ky. Admin. Regs. 1:067(2). In analyzing an employer's knowledge, the question is not "if the [employer] '*could* have known that [the employee] was working overtime hours,' but 'whether he *should* have known.'" *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012) (emphasis added) (citing *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir.1995)).

In *Newton*, a city police officer sued under the FLSA, claiming that the city knew he was working more overtime hours than it paid him for. *Newton*, 47 F.3d at 747. The district court held that the city should have known the officer was working overtime, based on one supervisor's

16

testimony that the officer's work "can require an officer to work hours outside his regularly scheduled hours," and because one of his supervisors had access to all information regarding the officer's work activities. *Id*. at 749. The Fifth Circuit reversed, reasoning that "implicit in [the officer's] claim,"—and the district court's ruling—was the conclusion "that he was required to work more than his scheduled hours and could not take flex time to compensate for those unscheduled hours." *Id*. The court concluded that "there is no evidence in this record to support the contention that [the officer] could not have used flex time to make up for unscheduled hours worked." *Id*. Just the opposite—the court noted that the officer's supervisor stated that he expected officers to compensate themselves by taking flex time instead of unauthorized overtime. *Id*. In analyzing whether the city should have known the officer was working overtime, the court also found it significant that the officer was explicitly told that he could not work unauthorized overtime hours. *Id*.

Like the officer in *Newton*, Pryor was explicitly told in her performance improvement plan that she was not authorized to use overtime to complete her work notes. [*See* DE 37-13 at 234]. While Pryor's supervisor did not state that she expected her workers to use flex time instead of unauthorized overtime, Pryor herself described her only specific example of working unscheduled hours as "not overtime but just, like, flexing time or working -- or working late . . ." [DE 37-21 at 295]. Viewed in the light most favorable to Pryor and drawing all reasonable inferences in her favor, Pryor's statements give support to the contention that Seven Counties *could* have known that Pryor was working overtime, but do not create a genuine dispute as to the material fact of whether Seven Counties knew or *should* have known that Pryor was working overtime rather than using flex time. As the Sixth Circuit has explained, "[a]t the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet,

17

he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists." *White,* 699 F.3d at 876 (citing *Wood*, 192 Fed. App'x at 381). So too here.

As a result, the undisputed facts show that Seven Counties is entitled to summary judgment on this claim. Seven Counties 's motion for summary judgment as to the wages and hours claim is **GRANTED**.[8]

## IV.    CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Pryor's Motion For Leave to File out of Time [DE 44] is **DENIED**.

(2) Seven Counties 's Motion for Summary Judgment [DE 37] is **GRANTED**.

(3) This action is **DISMISSED** with prejudice and **STRICKEN** from the Court's docket.

(4) The Court will issue separate judgment.

cc:    Counsel of record

---

[8] Pryor's response in opposition would not affect the Court's analysis on this claim. Pryor argues generally that "[e]vidence in Pryor's case indicates potential non-compliance by Seven Counties with these statutes, notably in failing to compensate for overtime and delaying payments," but cites to no evidence in the record to create a genuine dispute that she was "required her to work beyond standard hours without receiving due overtime pay." [DE 45 at 348].